**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)**

| | | |
|---|---|---|
| CPG Beyond, Inc.,<br>20365 Exchange Street<br>Suite 240<br>Ashburn, VA 20147<br><br>    Plaintiff,<br>vs.<br><br>United Standard Electric, LLC,<br>10121 SE Sunnyside Road, #300<br>Clackamas, OR 97015<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No: |

## COMPLAINT

CPG Beyond, Inc. ("CPG" or "Plaintiff") hereby submits this Complaint against United Standard Electric, LLC ("USE" or "Defendant") and alleges as follows:

### STATEMENT OF THE CASE

1.      CPG brings this action for breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty for a particular purpose based on a purchase order dated April 20, 2022 between CGP and USE pursuant to which USE agreed to sell transformers to CPG ("Purchase Order"). A copy of the Purchase Order is attached as Exhibit A.

### PARTIES

2.      CPG is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 19775 Belmont Executive Plaza, Suite 200, Ashburn, VA 20147.

3. On information and belief, USE is an Oregon limited liability company with a place of business located at 10121 SE Sunnyside Road, #300,Clackamas, OR 97015. Its sole member is a citizen of Washington.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between Plaintiff, a citizen of Virginia, and Defendant a citizen of Oregon, an (ii) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over USE because it submitted to jurisdiction in the Purchase Order governing the sale of goods subject to this litigation, which provides that Use "consents to the jurisdiction of the Virginia courts with respect to any dispute arising out of this Purchase Order." *See* Exhibit A at ¶ 17.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3).

## FACTUAL BACKGROUND

7. For nearly 20 years, CPG has been a pioneer in the data center industry, providing full lifecycle mission-critical infrastructure solutions to many of the world's most demanding Fortune 1000 companies. CPG designs, builds, and operates data centers for the world's largest internet-based companies.

8. CPG required eleven (11) transformers for a data center project (the "Project") located at 211 B St. N.W., Quincy, Washington and owned by CPG customer Microsoft Corporation ("Customer").

9. USE agreed to provide eleven (11) transformers that would meet the specifications set forth in the Purchase Order for the fixed price of $1,476,917. *See* Exhibit A.

10. USE agreed to "provide the Goods and/or Services in accordance with the specifications, delivery dates and prices set forth in this Purchase Order." *Id.* at ¶ 2.

11. The Purchase Order states that "[a]ll Goods not in compliance with this Purchase Order…may be rejected by CPG, and returned or held at [USE]'s expense and risk. CPG may charge to [USE] all costs incurred by CPG of inspecting, unpacking, examining, repacking, storing, and reshipping any Goods rejected as aforesaid. The remedies herein afforded to CPG shall not be exclusive, but CPG may hold [USE] liable for any and all damages arising from any breach or default as set forth herein." *Id.* at ¶ 3.

12. The Purchase Order also includes a one-year warranty by USE "that all Goods and/or Services provided [pursuant to the Purchase Order]: (i) will conform in all respects to the applicable specifications, or other descriptions identified in this Purchase Order or other documents relied upon by CPG; (ii) will perform as set forth herein, will be fit for their intended purpose and will be of good quality, merchantable and free from defects in material and workmanship." *Id.* at ¶ 4.

13. The Purchase Order further states that "In the event of the breach of the foregoing warranties, [USE] shall, at no cost to CPG, promptly repair, replace, modify, or re-perform the Goods or Services so as to correct such warranty breach. [USE] shall provide a new warranty period of twelve (12) months following the date of CPG's acceptance of any such warranty work. [USE] hereby assigns to CPG the benefit of any warranty provided by others associated with the Goods or Services. *The remedies hereinabove afforded to CPG shall not be exclusive*, but CPG may hold [USE] liable for any and all damages arising from any breach or default set forth above." *Id.* (Emphasis added).

14. The Purchase Order provides that "[t]he warranties set forth herein shall survive any inspection, delivery, acceptance, or payment by CPG with respect to all Goods and/or Services." *Id.*

15. The Purchase Order further provides that "Time is of the essence of this Purchase Order." *Id.* at ¶ 6.

16. Accordingly, CPG expected, and relied on the promises made by USE under the Purchase Order, that USE would provide functioning and non-defective transformers on a timely basis.

17. The Purchase Order required delivery of the transformers between August 26, 2022 and September 26, 2022. The Transformers were delivered by USE to the project site during the summer of 2023 and installation was completed in August of 2023.

18. CPG found defective current transformers in five (5) of the transformers during pre-energization checks. CPG notified USE of the defective current transformers on July 28, 2023. USE took no action to correct these deficiencies.

19. On October 10, 2023, one of the transformers supplied by USE failed to energize. CPG notified USE the same day.

20. USE engaged Transformer Power Service ("TPS") to inspect seven (7) of the supplied transformers (including the failed transformer), which inspections occurred between October 13 and October 15 of 2023.

21. TPS's inspection report, dated October 18, 2023, noted several significant defects in workmanship internal to the transformers. A copy of the Inspection Report is attached hereto as Exhibit B.

22. In an email dated October 30, 2023, USE informed CPG that USE could not repair the defective transformers on-site and that USE would need to remove the transformers from the site and ship them to USE's El Paso, Texas location for the repairs and acceptance testing and then return the repaired transformers to CPG.

23. In an October 30, 2023 email, CPG informed USE that, prior to allowing USE to pick up the transformers, USE must provide CPG and its insurance consultant with evidence that USE had appropriate Commercial General Liability insurance to protect CPG against damage to, or loss of, the transformers while in the care, custody and control of USE.

24. In a November 3, 2023 email, CPG's insurance consultant explained to USE the specific coverage required to protect CPG's interest in the transformers while in the care, custody and control of USE.

25. USE finally provided a certificate of insurance to CPG and its insurance consultant on November 1, 2023. CPG's insurance consultant informed USE in an email dated November 4, 2023 that the certificate of insurance provided by USE was insufficient to confirm the existence of the required coverage and requested a copy of the insurance policy as required by the Purchase Order. See Exhibit A at ¶ 15.b(i).

26. In an email dated November 10, 2023, USE informed CPG that USE's insurance consultant was working on providing a copy of the policy. USE made no attempt to contact CPG between November 10, 2024 and February 7, 2024.

27. USE finally provided a copy of a binder (not the policy) for their Commercial General Liability policy on February 7, 2024. The insurance coverage as indicated by the binder provided did not satisfy the requirements for such insurance indicated by CPG's insurance consultant.

28. USE's failure to comply with the terms of the Purchase Order created numerous serious issues for CPG's Project. For example, the lack of functional transformers caused significant delays on the Project, exposing CPG to breach of its contract with Customer and leaving CPG with no alternative but to purchase replacement transformers in order to satisfy the Project requirements, resulting in significant additional costs to the Project. Meanwhile, USE's defective transformers continue to encumber the Project site.

29. CPG has made all payments due to USE under the Purchase Order on a timely basis and has paid a total of $1,329,255.30, which is all of the $1,476,917 price except for the agreed ten percent (10%) retention ($147,661.70).

30. Pursuant to the terms of the Purchase Order, the ten percent (10%) retention ($147,661.70) may be withheld by CPG until satisfactory start-up, commissioning, close-out documentation and related procedures are completed and agreed to by CPG. See Exhibit A at ¶ 5 and ¶ 15.b(i).

31. By letter dated January 29, 2024 CPG demanded, pursuant to ¶ 3 of Purchase Order, that (i) USE immediately refund to CPG the $1,329,255.30 paid by CPG; (ii) USE immediately pay to CPG $2,500,000 to compensate CPG for increased costs and damages incurred as a result of USE's breach (including labor and rigging to install and test the replacement transformers and schedule delays (including uncompensated general conditions and general requirements costs)), and; (iii) once the payments referenced in (i) and (ii) above were made, to remove the transformers from the project site at USE's sole cost and expense on or before March 1, 2024.  *See* Exhibit A at ¶ 3; January 29, 2024 demand letter, a copy of which is attached hereto as Exhibit C.

32. USE failed to make the payments outlined above and to remove the transformers on or before March 1, 2024.

33. Pursuant to a written notice from CPG to USE dated March 6, 2024, CPG notified USE that CPG had elected to engage in the dispute resolution procedures set forth in ¶ 18 of the Purchase Order which notice outlines the basis of CPG's claim against USE.  A copy of CPG's written notice is attached as Exhibit D.

34. Executives from CPG and Lisa Ruth from USE met by teleconference on March 13, 2024 to engage in a dispute resolution discussion.  During the call, Ms. Ruth indicated that she did not have authority to reach any agreements on behalf of USE but that CPG would be shortly receiving a letter from USE's attorneys responding to CPG's claim, after which a second dispute resolution call could be scheduled with CPG's executives and USE's President, Juan Escobar.  CPG has not received such letter to date.

35. By emails dated March 25, 2024 and April 4, 2024, counsel to CPG attempted to schedule with USE a follow-up call with CPG executives and Mr. Escobar to discuss the dispute. USE made no attempt to schedule the call.

## CAUSES OF ACTION

## COUNT 1: BREACH OF CONTRACT

36. USE incorporates the allegations of paragraphs 1-35 of the complaint as if fully set forth herein.

37. The Purchase Order was a valid offer for the purchase of goods.

38. The Purchase Order was accepted by USE.

39. The Purchase Order is a valid, enforceable agreement.

40. CPG has fully performed its obligations as required by the Purchase Order.

41. All conditions precedent have been met or have occurred.

42. USE breached, and continues to breach, the Purchase Order by failing to provide eleven (11) functioning, non-defective transformers.

43. USE provided notice of USE's default.

44. USE engaged in the pre-litigation dispute resolution procedures set forth in the Purchase Order.

45. The Purchase Order provides that "[i]n the event of any such default by [USE] hereunder, [USE] shall be liable for any claims, damage, loss, liability, or expense (including but not limited to attorneys' fees) incurred by CPG arising out of such default."

46. As a direct and proximate result of USE's breaches, CPG suffered direct, incidental, and consequential damages.

47. CPG seeks its reasonable and necessary attorney's fees and court costs as provided by the Purchase Order.

## COUNT 2: BREACH OF EXPRESS WARRANTY

48. CPG incorporates the allegations of paragraphs 1-47 of the complaint as if fully set forth herein.

49. USE is a seller who was engaged in the sale of goods to USE.

50. USE expressly warrantied "that all Goods and/or Services provided [pursuant to the Purchase Order]: (i) will conform in all respects to the applicable specifications, or other descriptions identified in this Purchase Order or other documents relied upon by CPG; (ii) will perform as set forth herein, will be fit for their intended purpose and will be of good quality, merchantable and free from defects in material and workmanship." *Id.* at ¶ 4.

51. USE agreed that "[t]he warranties set forth herein shall survive any inspection, delivery, acceptance, or payment by CPG with respect to all Goods and/or Services." *Id.*

52. The warranty for the transformers was an integral part of the bargain between USE and CPG.

53. USE breached the warranty by providing defective transformers.

54. CPG provided prompt notice of the defects and attempted to work with USE to cure and repair the defective transformers.

55. CPG has been harmed and suffered direct, incidental, and consequential damages for which it seeks compensation as a result of the failure of the transformers to perform as warrantied.

56. USE is entitled to its reasonable attorney's fees and costs.

## COUNT 3: BREACH OF IMPLIED WARRANTY OF MERCANTABILITY

57. CPG incorporates the allegations of paragraphs 1-56 of the complaint as if fully set forth herein.

58. USE was engaged in the sale of goods to CPG.

59. USE is a merchant with respect to the sale of transformers.

60. USE's sale of transformers to USE is subject to the implied warranty of merchantability.

61. USE breached the implied warranty of merchantability by selling CPG transformers that were not merchantable, that were defective, and that were not fit for the ordinary purposes for which transformers are to be used.

62. CPG provided notice to USE of the failure of the transformers within a reasonable time.

63. As a result of USE's breach of the implied warranty of merchantability, USE has incurred, and will continue to incur, direct, incidental, and consequential damages.

## COUNT 4: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

64. CPG incorporates the allegations of paragraphs 1-63 of the complaint as if fully set forth herein.

65. USE was engaged in the sale of goods to CPG.

66. USE knew that CPG was intending to use the transformers for a project in Quicny, Washington.

67. CPG relied on USE's skill, judgment, and expertise in supplying transformers for use on the Project.

68. USE's sale of transformers to CPG was subject to the implied warranty of fitness for a particular purpose.

69. USE breached the implied warranty of fitness for a particular purpose by selling CPG transformers that were not fit to be used on the Project and that were defective.

70. CPG provided notice to USE of the failure of the transformers to perform within a reasonable time.

71. As a result of USE's breach of the implied warranty of fitness for a particular purpose, CPG has incurred, and will continue to incur, direct, incidental, and consequential damages.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, CPG prays for the entry of a judgment against USE, as follows:

  A. Awarding damages in an amount CPG will prove at trial, including but not limited to a refund of all amounts paid to USE and the costs of storage and removal of the defective transformers from CPG's premises, but which is in excess of $75,000;

  B. Awarding CPG its reasonable attorneys' fees and costs incurred in enforcing its rights;

  C. Awarding CPG such other and further relief as the Court determines is just and proper.

DATED: August 27, 2024.  Respectfully submitted,

/s/ *Constantinos G. Panagopoulos*
Constantinos Panagopoulos (#33356)
BALLARD SPAHR LLP
1909 K Street, NW – 12th Floor
Washington, DC 20006-1157
Telephone: 202-661-2202
Facsimile: 202-661-2299
cgp@ballardspahr.com

*Attorneys for Plaintiff CPG Beyond, Inc.,*