# Complaint Exhibit A



**Capitol Power Group, LLC**
**20365 Exchange Street**
**Suite 240**
**Ashburn, VA 20147**

# Purchase Order

| Date | PO# |
|---|---|
| 4/20/2022 | C-154128R-3 |

| Vendor | Ship To |
|---|---|
| United Standard Electric LLC<br>16775 Chula Vista Avenue<br>Sandy OR 97055 | CO9<br>211 B St NW<br>Quincy, WA 98848 |

| Project | Terms | Expected | Ship Via | FOB |
|---|---|---|---|---|
| 21-24005 | Net 30 | 8/26/2022 | Best way | Destination |

| Vendor Notes |
|---|
| This Purchase Order is subject to the attached terms and conditions. |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| QTY (10) Transformers – 3000 kVA Padmounted, Transformer, HV 13200D – LV 480Y/277, 60 HZ, 5 position tap changer 2-2.5% Al windings, VG100 Fire resistant (FM approved) seed oil filled, 55° C rise, KNAN, 30° C ambient., Dead front radial feed, Padmount Green type color finish with G&W Switches and SEL Relays<br>Freight to Quincy, WA<br><br>On site required dates : first shipments by 8/26/2022, shipments complete by 9/26/2022<br><br>Quote COT2101187 for pricing - The terms and conditions included in this purchase order apply and supersede.<br><br>10% Retention<br><br>LDs Language<br>The above expected Schedule Needs to be Met or Liquidated Damages<br>for the Work $30,000 per day for the first 30 days, increasing to<br>$50,000 per day beyond 30 days delay.<br><br>Payment<br>Net 30 with the following terms:<br>Progress Payments<br>10% when Engineering is complete<br>20% when released to production<br>70% when shipped<br><br>Cancellation Fees<br>15% - 5/1/2022<br>50% - 5/10/2022<br>75% - 5/15/2022<br>100% - 7/15/2022 | 1 | $1,368,778.00 | $1,368,778.00 |
| CO#1<br><br>Item 1: $108,139.00<br>Qty (1) – 500 kVA 3 Phase Padmounted Transformer, HV 13200D – LV 480Y/277, 60 HZ, 5 position tap changer 2-2.5% Al windings, VG100 Fire resistant (FM approved) seed oil filled, 55° C rise, KNAN, 30° C ambient., Dead front radial feed, Padmount Green type color finish. Field Installation of VFI.<br>Freight to Quincy, WA | 1 | $108,139.00 | $108,139.00 |

We appreciate your business!
Please email invoice to cpg.vendorinv@cpgbeyond.com.
Please do not mail.
All invoices must include a valid PO number for processing.

1 of 4



**Capitol Power Group, LLC**
**20365 Exchange Street**
**Suite 240**
**Ashburn, VA 20147**

# Purchase Order

| Date | PO# |
|---|---|
| 4/20/2022 | C-154128R-3 |

| Vendor | Ship To |
|---|---|
| United Standard Electric LLC<br>16775 Chula Vista Avenue<br>Sandy OR 97055 | CO9<br>211 B St NW<br>Quincy, WA 98848 |

| Project | Terms | Expected | Ship Via | FOB |
|---|---|---|---|---|
| 21-24005 | Net 30 | 8/26/2022 | Best way | Destination |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Quote COT2101187 REV4 (Cancellable option) The terms and conditions included in this purchase order apply and supersede.<br><br>Revised: 7/15/2022<br><br>Cancelled CO#2<br><br>ITEM 1<br>ETL labeling service for units of order COT2101187 $9,567.00 X 11<br><br>Quote COT2101187-A REV0<br>The terms and conditions included in this purchase order apply and supersede.<br><br>CPG Contacts<br>Mark Hetrick<br>Mobile: 503-444-1174<br>Mark.hetrick@cpgbeyond.com<br><br>Revised: 5/9/2023<br>Revised: 8/7/2023 CO#2 Cancelled<br><br>A current Insurance Certificate is Required with the following coverage:<br><br>Certificate Holders:<br>Capitol Power Group LLC<br>CPG Beyond Inc<br>20365 Exchange Street<br>Suite 240<br>Ashburn, VA 20147<br><br>Vendor to carry the following insurance coverage with limits not less than:<br><br>Commercial General Liability: Not less than $5,000,000 each occurrence for bodily injury and $5,000,000 each occurrence for damage to property, or, alternatively, $5,000,000 combined single limit each occurrence for bodily injury and property damage combined<br><br>Automobile Liability: Not less than $2,000,000 combined single limit for bodily injury and property damage combined, or, if limits are obtained on a per person and per accident basis, not less than $2,000,000 per person and per accident for bodily injury, and $500,000 per accident for property damage | 1 | $0.00 | $0.00 |

We appreciate your business!
Please email invoice to cpg.vendorinv@cpgbeyond.com.
Please do not mail.
All invoices must include a valid PO number for processing.

2 of 4



**Capitol Power Group, LLC**
20365 Exchange Street
Suite 240
Ashburn, VA 20147

# Purchase Order

| Date | PO# |
|---|---|
| 4/20/2022 | C-154128R-3 |

| Vendor | Ship To |
|---|---|
| United Standard Electric LLC<br>16775 Chula Vista Avenue<br>Sandy OR 97055 | CO9<br>211 B St NW<br>Quincy, WA 98848 |

| Project | Terms | Expected | Ship Via | FOB |
|---|---|---|---|---|
| 21-24005 | Net 30 | 8/26/2022 | Best way | Destination |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Workers' Compensation: Comply fully with all applicable workers' compensation, occupational disease, and occupational health and safety laws, statutes, and regulations to the full extent applicable in the state of Washington where the project is located<br><br>Employers Liability: Not less than $500,000 per accident. In jurisdictions where commercial insurance of workers' compensation is not permitted, this requirement may be fulfilled through addition of the "Employers Stop Gap Liability" endorsement to the commercial general liability policy<br><br>Professional Liability/Errors & Omissions Liability: Not less than $2,000,000 each claim. Such insurance shall include coverage for claims arising out of negligent acts, errors, or omissions in the rendering of<br>professional services to be provided, and for infringement of proprietary rights of any third party, including without limitation copyright, and trademark infringement. Upon expiration or termination of the contract or purchase order, Contractor will either maintain active policy coverage, or an extended reporting period, providing coverage for claims first made and reported to the insurance company within one year after the end of the contract or purchase order.<br><br>Vendor to provide a current insurance certificate with Certificate Holder: CPG Beyond, Inc., Capitol Power Group LLC, Capitol Power Services, LLC 20365 Exchange Street Suite 240 Ashburn, VA 20147 and all boxes should have GL, Auto, and Umbrella checked for Additional Insured.<br>For any vendors involved in structural/excavation/trenching work, X/C/U coverage must be included.<br>Waiver of subrogation should apply on all policies and therefore all boxes under Subr WVD should have an X or Yes checked.<br>Special language to be included as follows: General Liability, Automobile Liability, and Excess Liability policies are endorsed to name CPG Beyond, Inc. and Capitol Power Group LLC and their owners, employees, volunteers and affiliates as additional insureds in regard to work/service performed by the named insured. Waiver of right to subrogation is included on General Liability, Automobile Liability, Excess Liability and Workers Compensation policies in favor of certificate holder and additional insureds. Coverage is primary and non-contributory. 30 Days written notice will be provided to Certificate Holder should any of the above policies be cancelled prior to the expiration date Endorsements CG-2010, CG-2037, CG-2404 and WC0313 or equivalent to those forms are required to be provided alongside the Certificate of Insurance. Failure to do so may delay payment or termination of CPG's agreement with Vendor. All Insurance carriers must be A rated or better by AM Best for financial stability.<br><br>Thank you,<br>Molly Rehm<br>VP of Finance | | | |

**We appreciate your business!**
**Please email invoice to cpg.vendorinv@cpgbeyond.com.**
**Please do not mail.**
All invoices must include a valid PO number for processing.

3 of 4



**Capitol Power Group, LLC**
**20365 Exchange Street**
**Suite 240**
**Ashburn, VA 20147**

# Purchase Order

| Date | PO# |
|---|---|
| 4/20/2022 | C-154128R-3 |

| Vendor | Ship To |
|---|---|
| United Standard Electric LLC<br>16775 Chula Vista Avenue<br>Sandy OR 97055 | CO9<br>211 B St NW<br>Quincy, WA 98848 |

| Project | Terms | Expected | Ship Via | FOB |
|---|---|---|---|---|
| 21-24005 | Net 30 | 8/26/2022 | Best way | Destination |

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Office: 703-726-9726 | | | |

| | Total | $1,476,917.00 |
|---|---|---|

**ACKNOWLEDGED AND AGREED**

United Standard Electric LLC

By: _____

Name: _____

Title: _____

Date: _____

We appreciate your business!
Please email invoice to cpg.vendorinv@cpgbeyond.com.
Please do not mail.
All invoices must include a valid PO number for processing.

4 of 4

**TERMS AND CONDITIONS**

The terms and conditions set forth below shall govern this purchase order ("Purchase Order") issued by Capitol Power Group, LLC ("CPG") to the party identified thereon ("Vendor") unless there exists a separate signed written agreement between CPG and the Vendor (collectively, the "Parties") that specifies that it governs CPG's procurement of the Goods and/or Services (as defined below) ordered from Vendor.

1. <u>Terms and Acceptance</u>. This Purchase Order becomes a binding contract at the earliest of: (i) when signed acknowledgement is received by CPG; (ii) the fabrication or shipment according to schedule of all or any portion of the goods covered by this Purchase Order (the "Goods"); or (iii) when Vendor commences performance of any of the services specified in the Purchase Order (the "Services"). With respect to the work covered by this Purchase Order and the Vendor's performance hereof, Vendor hereby assumes all the obligations and risks which CPG has assumed towards the entity purchasing the Goods and/or Services from CPG ("Client") pursuant to the provisions of CPG's contract with Client, a copy of such contract to be provided to Vendor upon Vendor's request. It is a condition of this Purchase Order that any provisions printed or otherwise contained in any acknowledgment hereof, inconsistent with or in addition to the terms and conditions herein stated, and any alteration in this Purchase Order, shall have no force or effect and that Vendor by such acknowledgment thereby agrees that any such provisions therein or any such alterations in this Purchase Order shall not constitute any part of the contract of purchase and sale. This Purchase Order contains the entire agreement of the parties, and failure of either party to enforce any of its rights hereunder shall not constitute a waiver of such rights or of any other rights hereunder.

2. <u>General</u>. Vendor shall provide the Goods and/or Services in accordance with the specifications, delivery dates and prices set forth in this Purchase Order.

3. <u>Inspection</u>. All Goods not in compliance with this Purchase Order, or allegedly violating any statue, ordinance, or administrative order, rule, or regulation, may be rejected by CPG, and returned or held at Vendor's expense and risk. CPG may charge to Vendor all costs incurred by CPG of inspecting, unpacking, examining, repacking, storing, and reshipping any Goods rejected as aforesaid. The remedies herein afforded to CPG shall not be exclusive, but CPG may hold Vendor liable for any and all damages arising from any breach or default as set forth herein.

4. <u>Warranty</u>. Vendor expressly warrants that all Goods and/or Services provided hereunder: (i) will conform in all respects to the applicable specifications, or other descriptions identified in this Purchase Order or other documents relied upon by CPG; (ii) will perform as set forth herein, will be fit for their intended purpose and will be of good quality, merchantable and free from defects in material and workmanship; (iii) will be clear of all liens, claims, encumbrances or other interests and have free and clear title; (iv) will comply with all applicable federal, state, local and foreign laws and regulations; (v) will not violate any copyright, patent, trademark, trade secrets or other proprietary right of any third party; (vi) Vendor has the right and authority to provide CPG with the Goods or Services and entering into this Purchase Order shall not conflict with any contractual or other relationship to which the Vendor is bound; and (vii) Services will be performed in accordance with prevailing industry or professional standards by personnel that have appropriate skill, training and background to perform such Services in a compliant manner. In addition, Vendor is responsible for obtaining and maintaining all necessary licenses, permits and other operating authorizations required to furnish the Goods or for the performance of the Services. The warranties set forth herein shall survive any inspection, delivery, acceptance, or payment by CPG with respect to all Goods and/or Services. Upon request, Vendor agrees to certify compliance with any applicable law or regulation. Unless otherwise specifically stated, the warranty period shall be the greater of (i) one year from the date of acceptance of the Goods or Services by CPG or (ii) the warranty provided by the manufacturer of the Goods. The warranty entitlements set forth in this Section 4 cover both CPG and any Client to whom CPG re-sells the Goods. In the event of the breach of the foregoing warranties, Vendor shall, at no cost to CPG, promptly repair, replace, modify, or re-perform the Goods or Services so as to correct such warranty breach. Vendor shall provide a new warranty period of twelve (12) months following the date of CPG's acceptance of any such warranty work. Vendor hereby assigns to CPG the benefit of any warranty provided by others associated with the Goods or Services. The remedies hereinabove afforded to CPG shall not be exclusive, but CPG may hold Vendor liable for any and all damages arising from any breach or default set forth above. CPG agrees to furnish Vendor prompt notice of all defects of which it becomes aware. CPG may affect repair or replacement of defective Goods at CPG's option or if Vendor fails to or refuses to do so promptly, in which event Vendor shall reimburse CPG for the cost thereof. CPG's action to correct defects shall not relieve Vendor of any obligations or liability hereunder or under the Uniform Commercial Code.

5. <u>Price and Payment</u>. Prices recorded in this Purchase Order are not subject to increase. No additional amounts shall be chargeable to CPG because of taxes or excises, presently or hereafter levied on Vendor. If prices include taxes or excises, and if such taxes or excises or any part thereof are hereafter refunded to Vendor, Vendor shall immediately pay CPG the amount of such refund. All applicable sales taxes and other charges such as duties, customs, tariffs, imposts, and government-imposed surcharges shall be stated separately on Vendor's invoice. If a progress payment schedule is set forth on the face of this Purchase Order or in an attachment thereto, Vendor shall submit invoices in accordance with such progress payment schedule so long as the progress of performance of the Goods and/or Services are acceptable to CPG. If no progress payment schedule is set forth, Vendor shall submit its invoice(s) upon delivery of the Goods or performance of the Services subject to the terms identified on this Purchase Order. CPG shall issue payment as set forth on the first page of the Purchase Order, after receipt of a correct invoice provided Vendor has delivered conforming Goods or satisfactorily completed. Final payment shall be contingent on the receipt by CPG of a full submittal and close out package approved by CPG which shall include, without limitation, redline drawings, if applicable. CPG shall have the right at any time to set off any amount owing from Vendor to CPG or its subsidiaries of affiliates against any amount payable by CPG pursuant to this Purchase Order. Vendor acknowledges and agrees that invoices for Goods and/or Services rendered must be received by CPG no later than ninety (90) days after the date such Goods and/or Services are performed. Any invoices received by CPG relating to Goods and/or Services performed more than ninety (90) days after the date such Services were rendered shall be referred to as "Late Invoices". Vendor waives all rights and remedies related to Late Invoices including without limitation lien rights. If retention or retainage is indicated on this Purchase Order, CPG shall hold back payment of such retention until satisfactory start-up, commissioning, close-out documentation and related procedures are completed and agreed to by CPG, unless otherwise indicated on this Purchase Order.

6. <u>Delivery; Time of Essence; Packaging and Packing</u>. Time is of the essence of this Purchase Order. This Purchase Order is based upon Vendor's agreement that the Goods and/or Services will be delivered to CPG by the dates specified on the face of the Purchase Order or in an attachment thereto or as subsequently committed by Vendor. Vendor shall immediately notify CPG of any changes in such delivery dates. In addition, Vendor shall promptly, but no later than within two (2) business days thereafter, prepare and submit for CPG's approval a more detailed schedule for the delivery of the Goods or performance of the Services. Such schedule shall indicate the dates for the starting and completion of the various stages of delivery and shall be revised during the course of performance as required by the conditions of the work. No extension beyond the completion date or delivery schedules shall be made unless CPG approves such extension in writing. If delivery of Goods or rendering of Services is not completed by the time provided for or established herein, unless otherwise noted on the Purchase Order, CPG reserves the right, without liability, in addition to and without waiving any of its other rights and remedies under this Purchase Order or at law, to terminate this Purchase Order by notice effective when received by Vendor, as to any or all stated Goods not yet shipped or Services not yet rendered, and to purchase substitute items or services elsewhere and charge Vendor with any loss, damage or excess cost incurred by CPG, and Vendor agrees to promptly reimburse CPG for any such loss, damages or cost. The acceptance of later or defective deliveries shall not be deemed a waiver by CPG of its right to cancel this Purchase Order, or to refuse to accept further deliveries. Vendor shall properly package and pack the goods. Each container shall be clearly labeled to indicate the applicable Purchase Order number(s), part numbers and quantities of goods. A packing slip for each Purchase Order, itemized by container, shall accompany each delivery.

7. <u>Title and Risk of Loss</u>. Unless otherwise stated in this Purchase Order, Vendor shall bear the risk of loss of Goods until they have been delivered and accepted by CPG or its designee.

8. <u>Compliance with Laws</u>. Vendor represents and warrants that the Goods and the Services shall be manufactured, sold, and provided in compliance with all relevant federal, state, and local laws and regulations. Without limiting the foregoing, Vendor shall comply with (a) all applicable provisions of Executive Order 11246 dated September 24, 1965 and all rules, regulations and orders promulgated thereunder, and (b) all federal, state and local equal opportunity and affirmative action requirements with regard to race, color, sex, religion, age, disabilities, national origin and Vietnam veterans or disabled veteran status, including the federal requirements found in 41 CFR Part 60 which are herein incorporated by this reference as well as other protected groups. Vendor shall also require that its subcontractors and vendors comply with each of the foregoing, as applicable.

9. <u>Indemnification/No Consequential Damages</u>. To the fullest extent permitted by law and notwithstanding anything herein to the contrary, Vendor shall indemnify, defend and hold CPG harmless from and against any and all claims, damage, loss, liability or expense (including but not limited to attorney's fees) arising out of or in connection with Vendor's Goods or Services under the Purchase Order including, without limitation, : (i) defective workmanship, quality or materials in or related to the Goods or Services (ii) bodily injury to persons (including death) or loss of or damage to property resulting from Vendor's performance of this Purchase Order or any negligent act or omission of Vendor; (iii) Vendors' breach of any provisions of this Purchase Order; or (iii) any allegation that any Goods, any part thereof, furnished under this Purchase Order infringes any patent, copyright or trademark or misappropriates such third party's trade secret. If a final injunction against CPG's use of any Goods(s) results from such a claim of infringement (or if CPG reasonably believes such a claim is likely), Vendor shall, in addition and at its expense as CPG requests: (a) obtain for CPG the right to continue using the Goods; or (b) replace or modify the Good(s) so that such Good(s) becomes non-infringing but functionally equivalent. Other than Vendor's liability for liquidated damages as may be set forth in this Purchase Order, neither party shall be liable for any loss of profit or revenue by the other party for any other consequential, incidental, indirect or economic damages incurred by the other party arising out of this Agreement.

10. <u>Ownership of Work Product</u>. "Work Product" shall mean all deliverables, inventions, innovations, improvements, or other works of authorship that Vendor (or its subcontractors) may conceive or develop in the course of performing the Services, whether or not the Work Product is eligible for patent, copyright, trademark, trade secret or other legal protection. Vendor agrees that all such Work Product is considered work for hire and shall be the sole and exclusive property of CPG or its designee. Vendor agrees to execute such further documents and to perform such further acts, at CPG's expense, as may be necessary to perfect the foregoing assignment and to protect CPG's rights in the Work Product.

11. <u>Modification</u>. CPG may at any time, by written order, make changes or additions within the general scope of this Purchase Order. In addition, any requests by Vendor for a Change Order shall be made in writing. In either case, Vendor shall not proceed with any change (including, without limitation, any change in cost, quantity, delivery, or completion schedule) without prior authorization from CPG. If any such change causes an increase or decrease in the cost of, or the time required for, performance of this Purchase Order, Vendor shall notify CPG in writing immediately, and an appropriate equitable adjustment will be made in the price or time of performance, or both, by written modification of this Purchase Order signed by both parties; provided, however, that payment for changes arising in any way from the order, act or omission of Client shall only be made if, when and to the extent CPG receives payment from the Client for such change.

12. <u>Term and Termination</u>. Unless terminated as provided herein, this Purchase Order shall not terminate until satisfactory completion of the work has occurred as specified in the Purchase Order. CPG reserves the right at any time and from time to time without cause, to cancel all or any part of the undelivered portion of this Purchase Order by notice to Vendor. In the event of such cancellation, if a cancellation schedule is set forth in this Purchase Order, Vendor shall be paid in accordance with such schedule; otherwise, CPG shall only be liable for amounts which are due Vendor under this Purchase Order for Vendor's Goods delivered and/or Services completed (provided Vendor delivers to CPG all Goods and Services in a satisfactory manner up to the effective date of termination) and CPG shall not be liable to Vendor for loss of anticipatory profits or cancellation fees. Upon Vendor's material breach of the terms of this Purchase Order, Buyer shall have the unrestricted right to cancel and terminate the Purchase Order without cost or liability to the Buyer. In the event of any such default by Vendor hereunder, Vendor shall be liable for any claims, damage, loss, liability, or expense (including but not limited to attorneys' fees) incurred by CPG arising out of such default. The acceptance of Goods or performance of Services after the occurrence of any of the events above enumerated shall not affect the right of the CPG to cancel its additional obligations.

13. <u>Waiver of Liens</u>. Vendor agrees to furnish, at CPG's request and prior to any payments hereunder, a bill of sale and contingent release of liens satisfactory to CPG. In the event liens of any kind are filed by anyone in violation of this Section, Vendor shall have the lien discharged within three (3) days thereafter.

14. <u>Claims; Disputes</u>. Any claim by Vendor for any adjustment in the price or time for performance must be asserted within 3 days of occurrence of the event giving rise to such claim, or such other period as may be agreed upon in writing by the parties. In the case of any claim involving this Purchase Order, CPG shall issue a decision which shall be followed by Vendor without interruption, deficiency or delay pending resolution of such dispute. If Vendor does not agree with such decision, Vendor may make a request for an equitable adjustment which shall be resolved as follows: (i) in the case of a claim or dispute in any way arising out of or relating to the act or omission of the Client or involving discrepancies in the drawings or specification of this Purchase Order, Vendor agrees to be bound to CPG to the same extent as CPG is bound to Client and by any and all decisions and determinations made, whether by a party, board or court, with respect to such dispute pursuant to CPG's contract with Client and (ii) in the case of a claim or dispute which does not arise out of or relate to the act or omission of the Client or involve discrepancies in the drawings or specifications of this Purchase Order, Vendor and CPG shall resolve such claim or dispute through negotiation and/or litigation.

15. <u>Insurance</u>. Prior to furnishing the Goods and/or Services, Vendor shall obtain and continuously maintain during the term of this Purchase Order, adequate insurance from carriers with an A rated or better carrier by AM Best in the minimum amounts set forth on the face of this Purchase Order or, if not so stated, as set forth below, which may be amended by CPG from time to time.

    a. **Minimum Insurance Requirements**:

        i. Workers' Compensation: statutory limits for all applicable states
        ii. Employer's Liability: $1million per employee per event;
        iii. Commercial General Liability: $1million per occurrence, $2 million aggregate; occurrence basis with a General Aggregate per project
        iv. Business Auto Liability: $1 million combined single limit;
        v. Professional Liability: $1 million per occurrence, $1 million per annual aggregate;
        vi. Umbrella/Excess liability: $5 million per occurrence, $5 million in the aggregate

    b. **Certificate of Insurance**

        i. Upon request by CPG, but at least annually and upon any decrease in insurance coverage amounts and/or limits, Vendor shall provide CPG with certificates of insurance, and shall name CPG, its parents, subsidiaries, affiliates, directors, officers and employees, successors and assigns as an additional insured with respect to any general liability insurance and umbrella/excess insurance. Failure to obtain the required documents prior to the work beginning shall not waive Vendor's obligation to provide them. CPG reserves the right to require complete, certified copies of all required insurance policies, including endorsements required by these specifications, at any time.
        ii. Vendor hereby agrees to waive subrogation against CPG, and that Vendor's insurance policies shall include a waiver of subrogation provisions.
        iii. Vendor agrees that Vendor's insurance shall be primary, and CPG's insurance shall be excess and non-contributory. Vendor shall ensure its insurance policies are endorsed to this effect.
        iv. Vendor's obligations to maintain insurance shall in no way limit the liability or obligations assumed by Vendor under the Purchase Order. If Vendor maintains broader coverage and/or higher limits than the minimums contained herein, CPG requires and shall be entitled to the broader coverage and/or the higher limits maintained by Vendor. Any available insurance proceeds in excess of the specified minimum limits of insurance and coverage shall be available to CPG.
        v. In addition, Vendor shall, upon CPG's request, provide CPG with a performance payment bond in the amount equal to the value of the labor and/or services performed bin connection with the project identified on the Purchase Order.

16. <u>Confidentiality</u>. "Confidential Information" shall mean any proprietary, confidential and/or trade secret information concerning or relating to the property, business and affairs of the party disclosing such information (the "Disclosing Party") that is disclosed to the other party (the "Receiving Party") under this Agreement, except for information that was previously known to the Receiving Party free of any obligation to keep it confidential, is subsequently made public by the Disclosing Party or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence and used or disclosed only to the extent reasonably necessary in the performance of obligations under this Agreement. All such disclosures of Confidential Information shall only be made to those who have a need to know for purposes of performing the obligations under this Agreement, and who are bound by a written agreement with the Receiving Party to guard such disclosed Confidential Information. Vendor shall notify CPG of any unauthorized disclosure of Confidential Information.

17. <u>General</u>. Any contract resulting from the Purchase Order shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia. The Vendor consents to the jurisdiction of the Virginia courts with respect to any dispute arising out of this Purchase Order. Any assignment of rights or obligations by Vendor under this Purchase Order in whole or in part without prior written consent of CPG shall be void. All notices given by one party to the other party under this Agreement must be in writing and shall be sent by nationally recognized overnight courier at the addresses as set forth on the first page of the Purchase Order or via Email. Any notice delivered by Email shall request a receipt thereof confirmed by Email or in writing by the recipient and the effective date of such notice shall be the date of receipt, provided such receipt has been confirmed by the recipient. The terms, provisions, representations, and warranties herein shall survive the delivery of the Goods and Services and payment of the fees and charges. No Amendment or modification of this Purchase Order shall be effective unless it is in writing and signed by CPG. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior agreements, representations, and undertakings with respect to the subject matter. If any term of this Purchase Order is found to be unenforceable or contrary to law, it shall be modified to the least extent necessary to make it enforceable, and the remaining portions of this Purchase Order will remain in full force and effect.

18. <u>Dispute Resolution</u>. The following procedure shall be followed in all disputes other than breaches of material obligations under this Purchase Order which CPG and Vendor cannot resolve informally. The aggrieved party shall notify the other party in writing of the nature of the dispute with as much detail as possible about the nature of the dispute. Each party's designees shall meet (in person or by telephone) within fourteen (14) days after the date of the written notification to attempt to resolve the dispute. If those persons are unable to agree on a resolution, then senior management personnel of each of CPG and Vendor having authority to resolve the dispute without the further consent of any other person ("Management") shall meet or otherwise act promptly to facilitate an agreement. If Management cannot resolve the dispute within thirty (30) days after their initial meeting or other action (or in case either party fails to participate in the dispute resolution), either party may take such other and further action as it deems necessary. CPG and Vendor agree that neither of them shall take any legal action unless and until this dispute resolution procedure has been employed or waived.

19. <u>Equitable Relief</u>. Vendor acknowledges that monetary damages may be an inadequate remedy for breach by Vendor of this Agreement and, accordingly, CPG may enforce this Agreement, without following the alternative dispute resolution procedures set forth herein, by seeking appropriate equitable relief.

20. <u>Safety</u>. If Vendor is performing Services, then Vendor agrees to comply with CPG's and Client's policies and procedures relating to safety, as provided to Vendor (the "Safety Plan"). If Vendor fails to comply with the Safety Plan, CPG may require Vendor to develop a CPG approved Safety Improvement Plan (at Vendor's expense) that demonstrates how Vendor will minimize failures and ensure future compliance with the Safety Plan.

21. <u>Relationship of the Parties</u>. Nothing herein shall be deemed to constitute a joint venture or partnership between Vendor and CPG. If Vendor uses its own personnel, employees or contractors, Vendor assumes full liability for payroll withholding, workers compensation and other statutory contributions for such individuals.

22. <u>US Government Flow Downs.</u> THE FOLLOWING SECTION 22 APPLIES ONLY IF GOODS OR SERVICES TO BE PROVIDED IN SUPPORT OF A PRIME CONTRACT WITH THE FEDERAL GOVERNMENT.

    a. If the Goods or Services are used in support of a Prime Contract with the Federal Government, Vendor will comply with the following provisions of the Federal Acquisition Regulation (FAR): 48 CFR Part 52:

        i. 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) if the agreement exceeds $5,000,000 and has a performance period of more than 120 days;
        ii. 52.222-54, Employment Eligibility Verification (JUL 2012);
        iii. 52.219-8, Utilization of Small Business Concerns (Jan 2011) if the agreement offers further subcontracting opportunities. If the agreement (except agreements with small business concerns exceeds $650,000 ($1,500,000 for construction of any public facility), the Vendor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities;
        iv. 52.222-26, Equal Opportunity (Mar 2007);
        v. 52.222-35, Equal Opportunity for Veterans (Sept 2010);
        vi. 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010); and
        vii. 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496) (for agreements that exceed $10,000 and that will be performed wholly or partially in the United States).

    b. If Services to be performed by Vendor are subject to the Service Contract Act of 1965, 41 USC § 6701 et seq. ("SCA"), as implemented by the Department of Labor in 29 CFR. Part 4 and FAR Subpart 22.10, Vendor will comply with (a) FAR 52.222-41, Service Contract Act of 1965 (Nov 2007); and (b) 52.222-17, Nondisplacement of Qualified Workers (Jan 2013) (E.O. 13495).

    c. (i) Vendor represents that as of the time of award of this Agreement, the Vendor and its principals are not debarred, suspended, or proposed for debarment by the Federal Government; and (ii) Vendor will include the requirements of FAR 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors, Debarred, Suspended, or Proposed for Debarment (Dec 2010) (appropriately modified for the identification of the parties) in each subcontract that exceeds $30,000 in value and is not a subcontract for commercially available off-the-shelf (COTS) items, as defined in FAR 2.101.

    d. As used in the referenced FAR clauses "Contract" means this Agreement; "Contracting Officer" means the U.S. Government Contracting Officer; "Contractor" and "Offeror" means Vendor; "Prime Contract" means a prime contract between CPG and the Federal government or between a customer of CPG and the Federal Government; and "Subcontract" means any contract placed by Vendor with lower-tier subcontractors under this Agreement.